UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



FILED
AUG 2 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| Professor Debabrata Saha, Ph.D <br> 9409 Fair Pine Lane <br> Great Falls, VA 22066 <br><br>    Plaintiff, <br><br> v. <br><br> DONALD LEHMAN, Individually and in his capacity as <br> Executive Vice President for Academic Affairs <br> of the George Washington University <br> 2121 Eye Street, N.W. <br> Suite 813 <br> Washington, D.C. 20052 <br><br> and <br><br> TIMOTHY TONG, Individually and in his capacity as <br> Dean, School of Engineering & Applied Science <br> 725 23rd Street, N.W. <br> Washington, D.C. 20052 <br><br> and <br><br> THE GEORGE WASHINGTON UNIVERSITY <br> SERVE: <br>     Denis Blumer, Esquire <br>     Vice President and General Counsel <br>     The George Washington University <br>     2100 Pennsylvania Avenue, N.W. <br>     Washington, D.C. 20052 <br><br>    Defendants. | C.A. NO. <br><br> CASE NUMBER 1:06CV01493 <br><br> JUDGE: Royce C. Lamberth <br><br> DECK TYPE: General Civil <br><br> DATE STAMP: 08/24/2006 <br><br> JURY ACTION <br><br><br> JURY TRIAL DEMANDED |

**COMPLAINT**
**(FALSE ARREST AND WRONGFUL TERMINATION IN VIOLATION OF 42 U.S.C.**
**§1983 AND THE COMMON LAW OF THE DISTRICT OF COLUMBIA,**
**FALSE LIGHT AND INVASION OF PRIVACY)**

Debabrata Saha, Ph.D, plaintiff, by his attorneys, John F. Karl, Jr., and Karl & Tarone, sues Donald Lehman, Timothy Tong and George Washington University (hereinafter "GWU") and states:

## I. PARTIES AND JURISDICTION

1   This Court has federal question jurisdiction over claims arising under 42 U.S.C. §1983 and pendent jurisdiction over Professor Saha's common law claims.

2.   This Court has personal jurisdiction over the defendants pursuant to D.C. Code §13-423(a) because defendants transact business in the District of Columbia and caused tortious injury in the District of Columbia by committing tortious acts in the District of Columbia.

3.   Plaintiff Saha is a resident of Virginia and is employed as an Associate Professor in the Department of Electrical and Computer Engineering at GWU. Professor Saha has tenure.

4.   Defendant Lehman has his principal place of business in the District of Columbia.

5.   Defendant Tong has his principal place of business in the District of Columbia.

6.   Defendant GWU is a resident of and has its principal place of business in the District of Columbia.

## II. BACKGROUND FACTS

7.   On Monday, August 29, 2005, Professor Saha visited the offices of the Department of Electrical and Computer Engineering ("ECE") to confirm the times and days on which he would be teaching in the Fall, 2005 semester. Departmental Secretary Debbie Swanson confirmed to Professor Saha that he would be teaching Communications Theory, a course he had taught since 1987, and that his first class was scheduled for 7:10 p.m. on Thursday, September 1, 2005.

8. On Tuesday, August 30, 2005, Professor Saha visited the ECE department again and spoke with Debbie Swanson about whether he would also be teaching Information Theory, ECE-241, that semester. On his way out of the Department's offices, Professor Saha again noted that his first class was scheduled for 7:10 p.m. on September 1, 2005.

9. On Thursday, September 1, 2005, at 7:10 p.m., Professor Saha began teaching his assigned class in Communications Theory on the day and in the location where he was directed to teach. About ten minutes after he started his class, Professor Saha heard a knock on the door. Professor Saha was interrupted by four or five uniformed Special Police Officers employed by GWU. Under the law of the District of Columbia, GWU's police officers are "state actors" for the purposes of 42 U.S.C. §1983. One of the GWU Special Police Officer asked Professor Saha, "Can I talk to you for a minute?" The Special Police Officer advised Professor Saha that he was not supposed to teach this course because he had been "suspended."

10. The GWU Special Police Officers directed Professor Saha to stop teaching his class. The GWU Special Police Officers required Professor Saha to leave the classroom and the building in their custody. All of the GWU Special Police Officers paraded Professor Saha out of the class room and down the hall to the elevator. The GWU Special Police Officers escorted Professor Saha down to the ground floor in the elevator and out of the classroom building where he had been teaching.

11. Professor Saha then went to the ECE Department offices to check his mailbox to see if there was any confirmation of the alleged suspension. There was no communication relating to the suspension in his mailbox.

12. Professor Saha also checked the Department's Bulletin Board. The information

on the bulletin board confirmed that Professor Saha was assigned to teach Communications Theory, the course from which he had just been removed by GWU's Special Police Officers.

13. Defendants never advised Professor Saha prior to this class that they intended to suspend him from his teaching duties, to have him arrested in front of his students, or that he would be escorted out of his class by GWU Special Police Officers. When Professor Saha taught his class on September 1, 2005, he was authorized to be present in the class room on the day of his arrest by GWU's Special Police Officers. At no time prior to this class did anyone ever advise Saha that his teaching schedule was changed or that he was not supposed to teach this [or any other] class.

14. On Friday, September 2, 2005, Profesor Saha returned to the ECE Department to meet with Chairman Korman. Departmental Secretary Debbie Swanson told Professor Saha that Professor Korman was expected later that morning. Professor Saha said he would wait for Professor Korman to arrive and he asked Ms. Swanson to let him know as soon as Professor Korman arrived. Professor Saha had authority to be in his office to meet with the Chair of the ECE Department.

15. While Professor Saha was in the ECE Department's offices, he checked the Bulletin Board, which continued to show that he was scheduled to teach ECE-203 and ECE-243. When he went to his office, Professor Saha found a sealed envelope on the table in his office. Professor Saha decided not to open the envelope until he could do so in the presence of Chairman Korman.

16. While Professor Saha was waiting in his office for Chairman Korman to arrive, Arraon M. Morningstar, a Special Police Officer employed by GWU, entered his office. Officer

Morningstar was accompanied to by two other Special Police Officers. Officer Morningstar took away Professor Saha's office key and served him with a "Bar Notice" which prohibited Professor from being on campus. Officer Morningstar also gave Professor Saha a handwritten note suggesting he contact Vice President Lehman and Dean Tong.

17  Officer Morningstar and the two other Special Police Officers then escorted Professor Saha out of his office and down the hall, where he was seen by GWU students, some of whom had previously taken his classes, faculty members and support staff. Officer Morningstar and the two other Special Police Officers surrounded Professor Saha and escorted him down the elevator to his car, where he was seen by more students and employees of GWU. Officer Morningstar and the two other Special Police Officers watched Professor Saha until he drove out of the parking garage.

18.  GWU's Special Police Officers were acting within the scope of their employment and under the color of state law and at the direction of the highest ranking officials of GWU, including defendants Lehman and Tong, who were the final decision makers for GWU.

19.  Defendants Lehman, Tong, and GWU knew, or should have known that Saha had not been advised that Lehman sought to suspend him from his teaching duties at the time they directed Special Police Officers to remove Professor Saha from the classroom on September 1, 2005. Defendants Lehman, Tong, and GWU knew, or should have known that Saha had not been advised that Lehman sought to suspend him at the time the Special Police Officers removed Professor Saha from the classroom on September 1, 2005. Defendants Lehman, Tong, and GWU acted maliciously, willfully, wantonly and in reckless disregard of Saha's rights.

## COUNT I
### (VIOLATION OF 42 U.S.C. §1983)

20    Plaintiff repeats and incorporates by reference all of the allegations set forth in ¶1 though ¶19 above.

21.    Defendants, under color of statute, ordinance, regulation, custom, or usage of the District of Columbia deprived Professor Saha of his rights, privileges, or immunities secured by the Constitution and laws of the District of Columbia and the United States. Defendants acted intentionally, or with reckless disregard, in violating Saha's clearly established rights.

22    As a direct and proximate result of defendant's actions, Professor Saha suffered emotional distress and damages to his reputation, embarrassment and humiliation. Defendants acted willfully, wantonly, maliciously and in reckless disregard of plaintiff's rights and reputation, thereby making themselves liable for punitive damages in an amount to be determined at trial.

## COUNT II
### (FALSE ARREST AND IMPRISONMENT)

23    Plaintiff repeats and incorporates by reference all of the allegations set forth in ¶1 though ¶22 above.

24    Defendants caused the false arrest and imprisonment of Professor Saha where he was detained and restrained from teaching his class and was escorted from the class room and then from the building where he was teaching.

25    As a direct and proximate result of defendant's actions, Professor Saha suffered emotional distress and damages to his reputation, embarrassment and humiliation. Defendants acted willfully, wantonly, maliciously and in reckless disregard of plaintiff's rights and reputation, thereby making themselves liable for punitive damages in an amount to be determined at trial.

## COUNT II
## INVASION OF PRIVACY-FALSE LIGHT

26. Plaintiff repeats and incorporates by reference all of the allegations set forth in ¶1 though ¶25 above.

27. On September 1, 2005, defendants improperly publicized facts about plaintiff which placed plaintiff in a false light by attributing to his conduct characteristics which were false and deserving of arrest and being escorted out of the class room by Special Police Officers employed by GWU. Defendants did so again on September 2, 2005, when they had Professor Saha escorted out of his office by Special Police Officers employed by GWU.

28. Defendants knew that the facts they publicized or caused to be publicized about the plaintiff were false, or printed them with a reckless disregard for the truth of those facts.

29. Defendants' actions in publicizing false representations or imputations about Professor Saha placed the plaintiff in a false light that would be highly offensive to a reasonable person. As a result of defendant's conduct, Professor Saha suffered emotional distress and damages to his reputation, embarrassment and humiliation. Defendants acted willfully, wantonly, maliciously and in reckless disregard of plaintiff's rights and reputation, thereby making themselves liable for punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, for compensatory damages in the amount of $500,000 in compensatory damages and $500,000 in punitive damages, plus interest, reasonable attorney's fees and costs.

Plaintiff further requests the Court grant such other and further relief as the Court deems appropriate, proper and just.

Respectfully submitted,

John F. Karl, Jr. #292458
Karl & Tarone
900 17th Street, NW
Suite 1250
Washington, DC 20006
202.293.3200
202.429.1851 (fax)
Counsel for Plaintiff

**JURY DEMAND**

Plaintiff demands a trial by jury.

John F. Karl, Jr.