the plaintiff and mislead the Plaintiff to place the Plaintiff in the classroom so that they could carry out their vengeance and humiliate Prof. Saha in a shaming way.

- Further, Defendant Lehman and Tong used a letter of Lehman dated October 30, 1997 in their complaint dated Sept. 16, 2005 to revoke Saha's tenure. Lehman, in spite of request from Faculty Senate Hearing Committee, **failed to produce his October 30, 1997 letter** which he used in his complaint for tenure revocation; defendants' failure only implies defendants' deceitful conduct characteristics.

- Defendants cited  legal opinions and court cases which are mostly useless in the sense that they focus more on dissimilarities rather than similarity with the present case. For example, they cited *opinion of Judge Lamberth* : *Robinson v. District of Columbia*, 2006 WL 2714913, Sept 22, 2006.  It should be noted Robison was arrested for having no valid driver license and for being identified as the man who was vandalizing the cars with a crowbar. In contrast, Prof. Saha was delivering his scheduled lecture in the scheduled classroom, and was not carrying crowbar but lecture notes and education materials.

- Defendant cited *Judge Lamberth's opinion* on *Lohrenz v. Donnelly, 223 F. Supp. 2d 25 U.S. Dist. (2002)*. Defendants argued that to state a claim for invasion of privacy for false light, Saha must show (1) Publicity , (2) about a false statement, representation or imputation (3) understood to be of and concerning Saha, and (4) which places him in a false light that would be highly offensive to a reasonable person. Analyses in Section II clearly established that the set of  four criterion the Defendants cited for litmus test of Invasion of Privacy and False Light are convincingly fulfilled.

# Concluding Points

- Defendants failed to establish they served Prof. Saha the August 29, 2005 letter of suspension they claimed to legitimize their actions on Sept. 1st and Sept. 2nd, 2005 that led to Plaintiff's false arrest and imprisonment, invasion of privacy and false light, and violation of civil rights under 1983

- Defendant Lehman proved himself to be disingenuous in writing August 29, 2005 suspension letter with reference made to his June 27 and July 26, 2005 letters that he used as the cause for suspending Prof. Saha and initiating revocation of his tenure.

- The whole foundation of legitimacy of Defendants' action of suspending Prof. Saha and revoking his tenure lies on the notice issue of May 2nd, 2005 personnel committee meeting. During the faculty senate hearing, the senate panel struck out the May 2, 2005 meeting and the vote of the faculty at that meeting from the record. Without the legitimacy of the resolution in this meeting, the whole foundation fell apart.

- Defendants resorted to a procedurally defective procedure for a Faculty Senate Hearing for revoking Saha's tenure. Defendants rigged the process of hearing from the very beginning against Saha; the Defendants and the panel improperly time-barred the allowable events and evidence and kept the evidence on GW's corrupt academic practices, whistle blowing, discriminations and retaliations from being considered for deliberation that went partially against Saha.

- Saha appealed to President Trachtenberg and President Trachtenberg communicated to Saha that Executive Vice President Defendant Lehman recused himself. The tenure revocation process fell short of completion, and, currently in the Fall of 2007, GWU Faculty Senate, amongst the opposition of GW Counsel Mishkin, instituted its Grievance Procedure against Defendant Lehman and the George Washington University.

- Defendants used the Schaffner panel deliberation to strengthen their motion for summary judgment and Prof. Saha, through this response, requests that the court dismiss Defendants' motion for Summary Judgment, and enter judgment in favor of Plaintiff and against the Defendants on all counts of Plaintiff's First Amended complaint.

- Among immediate concerns for the proceedings to continue, it is to be noted that, *in contrast to Nov. 18, 2005 letter of Lehman*, GW stopped Plaintiff's pay cheque effective March 1st, 2007. GW is now actively engaged in putting Prof. Saha in extreme financial situation with the intent to stop Grievance Proceedings at the Senate and stop Legal Proceedings at this Court. Plaintiff, therefore, respectfully request the court to grant immediate relief as the court deems appropriate and just.

# IV

# Affidavits

# United States District Court
# For The District of Columbia

-----------------------------------------------

**Debabrata Saha,**

     **Plaintiff,**

**v.**

                                  **Civil Action No. 1:06-01493 (RCL)**

**Donald Lehman, Timothy Tong, and**
**The George Washington University**

     **Defendants.**

-----------------------------------------------


## Affidavit #1 DISPUTING Declaration of Felicia Archie, dated 7/31/07

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

     I **DISPUTE** the **Declaration** of Felicia Archie, dated 7/31/07 as follows :

1. I dispute Archie Declaration #5 : Felicia Archie did not explain to me about the Notice; she did not have any reason to explain because she did not serve the Notice as she claimed in Declaration #4. I (Plaintiff Saha) did not give away my GWorld Card. In fact, the GWorld Card is still in my possession. The Bar Notice was served by a different Police Officer who offered a Business Card to confirm identification.

2. I dispute Archie Declaration #6 : The sixth floor office area was not specially quite; it was business as usual. The activity of several uniformed police officers around my office (three of whom entered my office and at least one more stood by the side of the door in the hallway) continued for about forty minutes. During that time what was happening was within the viewing and hearing distance of many :

- Students going into and coming out of (TA/RA's) office right in front of my office observed the whole commotion.

46

- A student who took course(s) with me in previous semester(s) watched while I was being interrogated inside the office.

- A few faculty members looked into my office when I was being interrogated and my office key was being taken away from me. One of those faulty member whom I distinctly remember is Professor Roger Lang.

- The police officer waiting at the door, for a period of time, was engaged in conversation with me while I was surrounded by three others inside the office. This engagement of conversation from hallway can only be described as a commotion that was witnessed and heard by every student, faculty member, secretaries and staff who could be in the long hallway.

- Presence of uniformed police by the side of the door made the event even more publicized; the secretaries and staff members at the front desk, the students visiting the front desk and faculty members in the nearby open offices easily noticed and observed the unusual event.

- People using the Xeroxing room (in front of my office) and the students occupying the office in front of my office observed the interrogation and heard the conversations.

- At the end, the police officers, a few in front of me and few at the back, together paraded me through the long hall way across the doors of many offices (some of which were open); and the parade was witnessed by at least two staff members at the front desk, a student whom I knew by face, a person in the lobby in front of elevators, and a few while walking across the hall way. It is also very likely that there were other witness who observed the parade while sitting in the conference room and open offices, because usually these rooms are used by people.

3.    I dispute Archie Declaration #6 : more than two police officers rode the elevator with me. Also, there was another person (a female), I believed to be a student or a staff member from another department,  who was on the elevator.

4.    I dispute Archie Declaration #7 that there was no threat of arrest. By placing four/five uniformed officers surrounding my office, three of whom surrounded me inside my office for questioning, restraining my movement in getting out of my office, and carrying out the operation RHE (Retaliation, Humiliation, and Embarrassment) over a prolonged period of forty minutes in open hallway, GWU administration left no doubt about its motive. If I refused to leave, it was absolutely certain that they would restrain my movement, call MPD and get me handcuffed and arrested with some additional charges

against me; there is a history of carrying out such procedure on GWU campus. Enclosed Plaintiff Exhibit 3 of handcuffed picture of a student is just one of many such actions.

Relevant Plaintiff Exhibits  : #1: Bar Notice and Identity of Officer who served the Notice
#2: Handwritten Instruction served on Sept. 2nd, 2005
#3: Typical scenario when subjects do not obey GWUPD

*Debabrata Saha*

DEBABRATA  SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

*Uma G McGeeh*

Notary Public

My Commission Expires *12-31-07*
Notary Registration No. *121114*

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES *12-31-07*

**Plaintiff Exhibit 3**

- Hatchet Centennial
- Hatchet Alumni

- Blog

  - Hatchet Blog
  - Sports Blog
  - SA Blog
  - Sex Blog

- Podcast

Search...    ➡

Home > Campus News

# GW students arrested while protesting workers' rights

CI Guide
Summer 2007

**by Gabriel Okolski**

**Issue date:** 4/1/04 **Section:** Campus News
A group of GW students Tuesday called on the University to drop charges against 11 demonstrators who were arrested while trying to occupy the Marvin Center earlier in the week.

In a rally outside Rice Hall, about 30 students also urged GW to increase its employees' salaries and health benefits and join the Workers' Rights Consortium, an oversight group that ensures companies aren't violating labor laws.

"We're here today to support our students and demand that the University drop its charges," said junior Timothy Kaldas as he stood in front of the building that houses the office of GW President Stephen Joel Trachtenberg.

The arrest of nine GW and two Georgetown students and would not deter activists from demonstrating for greater worker compensation, junior Alex Freedman, who was not detained in Monday's protest.

"We will continue to carry out our campaign with an even louder voice," she said.

University officials reached for comment Wednesday afternoon said they were unsure whether GW would agree to drop unlawful entry charges against the students.



Media Credit: Paul Goodman

While the Marvin Center is a public venue, refusing to vacate any piece of University property constitutes unlawful entry, according to the Student Code of Conduct.

At 1 p.m. Monday, students gathered in the Marvin Center Great Hall and set up tents, saying they would occupy the space until the University met their demands. About 45 minutes later, MPD arrested 11 students, including two from Georgetown University, for refusing to comply with GW's order to leave the building.

http://media.www.gwhatchet.com/media/storage/paper332/news/2004/04/01/CampusNews/Gw.Students....    8/15/2007

# United States District Court
# For The District of Columbia

---------------------------------------------------

Debabrata Saha,

     Plaintiff,

v.

                            Civil Action No. 1:06-01493 (RCL)

Donald Lehman, Timothy Tong, and
The George Washington University

     Defendants.

---------------------------------------------------

## Affidavit #2 DISPUTING Declaration of Defendant Donald R. Lehman, dated August 1, 2007

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

I **DISPUTE** the **Declaration** of Defendant Donald R. Lehman, dated August 1, 2007 as follows :

1. I dispute Lehman Declaration #5 in the sense that Defendant Lehman neither informed me nor made his August 29, 2005 letter available to me. I never received this letter. He and I never spoke about this letter before September 9, 2005 telephone conversation.

In addition I like to add :

(a) The first time I saw a copy of the letter was on September 8, 2005 in my meeting with Defendant Tong and ECE Chair Korman. In that September 8 meeting, Defendant Tong claimed that **he personally went to my office in my absence and placed a copy of the letter in sealed envelope on my TABLE on August 29, 2005.**

In that meeting, I immediately told him (Tong) that I was in my office on August 29 for a few hours; also I did not find the envelope on my TABLE the next morning of August 30 when I went to my office. On August 30, I had a brief conversation with Secretary Debby Swanson about the course assignment, and a brief conversation with Staff member Lawrence Cheek about Xerox code; I also checked the ECE Bulletin Board to confirm the course assignment, room number etc. for the class to begin on September 1st, 2005 and my class was on there.

(b) On August 29 and August 30, 2005, both days, I checked my mail box in the Academic Center and I did not find any letter from the Defendant Lehman. I did not find any letter slipped under my office door either of the two days, nor found any envelope on my Table. On both days I had conversations with secretary Swanson at the front desk, and she did not give me any indication of August 29 letter; rather she confirmed my course assignments.    The same assignment was also reflected on ECE Bulletin Board till September 2nd, 2005; ECE Chair Korman's testimony in the Faculty Senate Hearing (Plaintiff Exhibit 4) also confirms this assignment.

(c) I did not receive August 29, 2005 letter at my residence. If  I had the slightest knowledge of any such suspension, I wouldn't be foolish to go to the class on Sept. 1st to get humiliated in front of the students while teaching in the class, then paraded by four/five uniformed officers in the hallway, elevator, and lobby of a crowded Library (Gelman Library), and traumatize myself and traumatize the students as well. Some students later acknowledged that they were shaken up by the incident (Plaintiff Exhibit 5).

(d) On September 1st evening I was told by the Police Officer Francis Williams Jr. that I was suspended from teaching and should leave the class room (Ref. to Willams' Declaration, part-12, Docket dated August 3, 2007). After being paraded out of the Gelman Library, I went to check my mail in the Academic Center, and still there was no indication of suspension of any sort. ECE Bulletin Board continued to misguide me till Sept. 2nd about the course assignments. If I could get a copy of the suspension letter on the night of September 1st, I wouldn't go to my office the next day of Sept. 2nd, and again get paraded publicly in the Academic Center after the Bar Notice was served.   Vice President Lehman and his administrative machinery orchestrated and carried out an excellent job of humiliating the Plaintiff not only once, in the crowded library in the night, but also once more in the day light in the academic center the next morning. Defendants Lehman, Tong, and GWU acted maliciously, willfully, wantonly and in reckless disregard of Plaintiff Saha's rights.

(e) Plaintiff Exhibit 5 is a series of e-mail communications among some GWU administrators on and around Sept 2nd, 2005. The following is an excerpt from that exhibit:

_____

On 9/2/2005, Donald Lehman <lehman@gwu.edu> wrote
Can :

Thanks for your message. After reading Brana's message, I raised several questions with Tim Tong. I don't believe he has had yet had a chance to answer them.

I understand fully your concerns. At the same time, I do not know what Professor Saha knows or does not know. For example, are we sure that he has actually seen and read my letter to him ? ....................
Don

Donald R. Lehman
Executive Vice President for Academic Affairs
The George Washington University

  ..

  ..

---

This e-mail of Don Lehman on Sept. 2nd, 2005 proves that even after the Police Action in my classroom on Sept 1st, the Defendant himself was not sure whether I was aware of his August 29 letter. Defendant Lehman was questioned extensively in the GW Senate Hearing on the issue of delivery of August 29 letter. Relevant part of his testimony is Plaintiff Exhibit 6. In the light of this e-mail, it is not difficult to conclude that Defendant Lehman, through his Declaration #5, made a deliberate attempt to create a false impression about the fact.

(f) June 27 & July 26, 2005 letters of Lehman

Defendant Exhibit A is the August 29, 2005 suspension letter signed by Don Lehman. Defendant Lehman's decision of suspending Prof. Saha, and later initiating revocation of Saha's tenure was based on Saha's failure to respond to Lehman's June 27, 2005 and July 26, 2005 letters.

During GW Faculty Senate Hearing, Lehman was extensively questioned on the issue of these two letters and Lehman confessed that he knew Prof. Saha did not receive those certified letters, and those two letters were found returned unopened to GWU; GWU Counsel, Mr. Mishkin presented those returned letters to the Senate panel (Re. Plaintiff Exhibit 7 : excerpts from Hearing Proceedings). Plaintiff Saha request the court to consider this evidence to asses the credibility of Defendant Lehman.

Also proper evidence will be introduced to the court to prove that Lehman administration often created records for action only, without sharing them with the other party, and **often played with the date of creation of the record.**

Relevant Exhibits : # 4 : Testimony of Korman
                  # 5 : e-mail of Lehman
                  # 6 : Testimony of Lehman
                  # 7 : Excerpts from Hearing Proceedings

*Debabrata Saha*
DEBABRATA SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

Notary Public

My Commission Expires  _12·31-07_
Notary Registration No.  _121114_

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 12-31-07

53

# United States District Court
# For The District of Columbia

\---------------------------------------------------

**Debabrata Saha,**

     **Plaintiff,**

**v.**

                              **Civil Action No. 1:06-01493 (RCL)**

**Donald Lehman, Timothy Tong, and
The George Washington University**

     **Defendants**.

\---------------------------------------------------

## Affidavit #3 DISPUTING Declaration of Sandra Little, dated August 1, 2007

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

I **DISPUTE** the **Declaration** of Sandra Little, dated August 1, 2007 as follows :

1. I dispute Little Declaration #4 because it <u>directly and unequivocally</u> contradicts a statement of SEAS Dean Tong made on September 8, 2005 in 11:30 meeting in the Tompkins Hall. The meeting was attended by Plaintiff Saha, Defendant Tong, ECE Chair Professor Korman and Ms. Sandra Litte herself in the presence of a Police Officer. In that meeting, Defendant Tong told me in unequivocal term *that he (i.e. Tong) personally went to my office in my absence and placed the copy of the suspension letter on my table on Monday (i.e. August 29, 2005).*

*Debabrata Saha*
DEBABRATA SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on November 02, 2007.

*Daria G McGeeh*
Notary Public

My Commission Expires _12-31-07_
Notary Registration No. _121114_

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 12-31-07

54

# United States District Court
# For The District of Columbia

-----------------------------------------------------

Debabrata Saha,

      Plaintiff,

v.

                            Civil Action No. 1:06-01493 (RCL)

Donald Lehman, Timothy Tong, and
The George Washington University

      Defendants.

-----------------------------------------------------

**Affidavit #4 DISPUTING Declaration of Defendant Timothy Tong, dated August 1, 2007**

    I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

    I **DISPUTE** the **Declaration** of Defendant Timothy Tong, dated August 1, 2007 as follows :

1. Defendant Tong tried to establish a false impression through his statement #5. I did not receive the August 29, 2005 letter of Don Lehman slipped **under** my door, placed **on** my table, or delivered **at** my residence. Defendant Tong failed to provide evidence to establish his claim. If lying is a too strong word for dignitaries of The George Washington University, certainly defendant Tong, at least, massaged the TRUTH.

2. Defendant Tong's statement #6 and #7 are **unsubstantiated** attempts to throw shadow on the personality and behavioral pattern of a person (i.e. Plaintiff) whom he never met before his actions that led to the Police Actions inside Plaintiff's classroom; Tong never even had one conversation with the Plaintiff. Plaintiff Exhibit 8 is a letter of Tong addressed to Saha and Plaintiff Exhibit 9 is Saha's response to Tong; these letters are submitted to establish Tong's sense of professional responsibility and work ethics.

    Tong's statement #6 and #7 are deliberate attempts of creating a false impression about the Plaintiff's character. His statements are based on his **pre-conceived notions** without any fact to substantiate it. **In fact, his speculation in statement #7 was proven to be wrong, because Prof. Saha never went near any of the classrooms once he was notified on Sept 1st by Police Officer Williams that he was suspended.**

3. Statement #8 of Defendant Tong is again another **unsubstantiated** accusation against the character of Plaintiff. Defendant Tong claimed he arranged plain clothes security because of his speculation and concern about Plaintiff's "difficult and sometimes aggressive behavior with SEAS Faulty and Staff".

In the thirty five page long document for Summary judgment, the Defendants failed to describe details of a single incident that would support Tong's speculation about "Plaintiff's difficult and sometimes aggressive behavior". The Defendant only expressed speculations and concern of others without explaining how those concerns arose. The Defendants deliberately tried to tarnish the image, the character, and the reputation of the Plaintiff using speculative words of rumor.

Lehman, Tong, Korman, and Secretary Debby Swanson together conspired to mislead Prof. Saha to go the classroom on Sept.1st, 2007 and then sent plain clothe and uniformed officers to create a false impression on the minds of the students, staff, faculty and passerby; the objective was to create a false impression, a negative impression that couldn't be checked by ordinary people. The officers paraded Prof. Saha in the crowded Gelman Library in the night time and then again in the Academic Center the next morning in day light.

The Defendant(s) directly construed the plot of actions for violating the civil right of Prof. Saha that he had the right to be portrayed truthfully and as a law abiding peaceful person. The Defendant(s) directly construed the plot of actions to cause embarrassment and humiliation of the Plaintiff in the eyes of the student, faculty, staff, and general public of the GWU community. The Defendant(s) directly construed the plot of actions to cause harm to professional reputation of the Plaintiff. The Defendant(s) directly construed the plot of actions to cause financial damage in his professional earning. . The Defendant(s) directly construed the plot of intimidation of policing his freedom on campus under false fabricated pretext.

## Facts on Saha's Personality and Conduct :

Let us now observe some facts about Prof. Saha's conduct on two separate occasions as depicted in the statements of Officer Williams and Officer Archie, and Defendant Lehman

**Officer Williams** in the context of Sept 1st, 2005 Police action in Plaintiff's classroom wrote in his Declaration:

Item #5.  ......I asked Saha to leave at that time. Saha quietly gathered his belongings and left the classroom without incident.

Item #7.  .....Saha cooperated fully with us, without getting upset or raising his voice. As far as I could tell, no student or anyone else overheard our conversation.

**Officer Archie** in the context of Sept 2nd, 2005 Police action in escorting Plaintiff out of the Academic Center wrote in her Declaration:

Item #6. Saha left the building without incident

Item #7. Saha cooperated, without getting upset or raising his voice.


**Defendant Lehman** on 9/2/05 wrote (to ECE Chair Korman) (Plaintiff Exhibit 5)
Can :
..............
..............
.......It appears that Prof. Saha left the classroom in a peaceful manner last evening. If he has seen my letter, he should know that he is not to be teaching or appearing for classes etc.......

Note : Here once again Defendant Lehman confirmed that he was not sure even on Sept.2, 2005 whether Plaintiff Saha saw his August 29, 2005 letter. In spite of that, Lehman's moral conscience allowed him to take police actions while Plaintiff Saha was teaching in his class. In fact, what Lehman did in 2005 is the repetition of Police Action he took in Saha's class in 1997 right after Saha exposed the 1996 Qualifying Exam Scandal of GWU.

4. Statement #9 of Tong is factually incorrect in the sense that there were only Five students in the class (Plaintiff Exhibit 10). Use of the phrase **"at most"** is highly objectionable, and it only goes against the moral make up of a Dean of the George Washington University. By allowing the sense that humiliation, embarrassment, violation of civil rights, violation of decency of the civilized world in front of **"at most"** seven students is quite acceptable, Defendant Tong violated the Civil Rights law for the second time, and this time by expressing his mind in written words.

In addition I like to add :

Defendant Tong through his Declaration made a deliberate attempt to give the court an **unsubstantiated** wrongful portrayal of the character of the Plaintiff. His declarations suggest he failed to take any responsibility for his actions; he described himself to be a

man who just followed advice of others, speculated from concerns of others, and wrote irresponsible letter(s) at the suggestion of others, and secretly entered unknown person's office to implant documents. By his own admission (in Sept.8, 2005 meeting), he secretly entered Plaintiff Saha's office on August 29, 2005, **but he failed to acknowledge whether he (Defendant Tong) took away any thing from Plaintiff's office; many documents are unaccounted for. Most relevant in this context are documents related to 1999 investigation; if these were taken by Tong or any agent of GWU, it bears on credibility and wrongful treatment of Professor Saha.**

I (Plaintiff) got my education from three different universities in three different countries; but none of those universities made me prepared enough to encounter such petty thief like character (Defendant Tong) as an Academic Officer. This makes me genuinely concerned about the moral development of the generation of GWU students who accepts guidance from such officer(s).

Relevant Exhibits : #5 : e-mail of Lehman
#8 : Tong's letter dated 2002
#9 : Saha's response dated 2005
#10 : Class list of students who attended Saha's ECE-243, Fall 2005

Commonwealth of Virginia
County of Fairfax , to wit :

*Debabrata Saha*
DEBABRATA    SAHA

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

*Daria G McGeehan*

Notary Public

My Commission Expires *12-31-07*
Notary Registration No. *121114*

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES *12-31-07*

58

# United States District Court
# For The District of Columbia

-------------------------------------------------

Debabrata Saha,

      **Plaintiff,**

v.

                                       Civil Action No. 1:06-01493 (RCL)

Donald Lehman, Timothy Tong, and
The George Washington University

      **Defendants.**

-------------------------------------------------

## Affidavit #5 DISPUTING Declaration of Keely Walston, dated 8/2/07

    I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

    I **DISPUTE** the **Declaration** of Keely Walston, dated 8/2/07 as follows :

1. I like to point out that she claimed : "A copy of the letter bearing my handwritten notation to this effect is attached hereto.", but the copy is missing in the Docket 25, part-11.

2. I dispute Walston Declaration #4 that the attached QMS invoice **REFLECTS** the delivery of the letter by the courier service to Professor Saha at his residence. It is merely an **INVOICE, not a PROOF of DELIVERY, much less receipt.**

                                *Debabrata Saha*
                                DEBABRATA  SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on November 02, 2007.

                                      *Daria G McGeehan*
                                       Notary Public

My Commission Expires _12-31-07_
Notary Registration No. _121114_

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES _12-31-07_

59

# United States District Court
# For The District of Columbia

--------------------------------------------------

Debabrata Saha,

     **Plaintiff,**

v.                                              Civil Action No. 1:06-01493 (RCL)

Donald Lehman, Timothy Tong, and
The George Washington University

     **Defendants.**

--------------------------------------------------

## Affidavit #6 DISPUTING Declaration of Francis Williams Jr., dated 8/2/07

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

I **DISPUTE** the **Declaration** of Francis Williams Jr., dated 8/2/07 as follows :

1. I dispute Williams Declaration #6 :

(a) I was not accompanied by anybody from Gelman Library to the Academic Center. Rather, before I left the officers at the lobby of Gelman Library, I told them I would be going to Academic Center to check whether there was any mail that could explain the development of that evening that shocked me with great surprise.

(b) When I went to sixth floor of Academic Center, Chair Korman was in his office. His e-mail (Plaintiff Exhibit 11) confirms that Plaintiff was not accompanied by anybody.

(c) Officer Williams continued to write : "... I watched from the entrance of the Academic Center as Saha left the Academic Center and went to his car which was parked on the street."

That description is quite absurd because I never parked my car on the street since 1989. I always had parking permit for basement garage of Academic Center. Picture of my car is the Plaintiff Exhibit 12.

2. I dispute Williams Declaration #7 :

Officer Williams wrote : "..... Nor did we threaten him with arrest if he refused to cooperate."

I dispute this fact. If I refused to leave (which I did not), it was absolutely certain that they would restrain my movement, call MPD and get me arrested by MPD with some additional charges against me; there is a history of carrying out such procedure on GWU campus. By placing four/five uniformed police officers surrounding my classroom in a crowded library, GWU succeeded in threatening me of getting arrested with hand cuff even without saying so. Enclosed Plaintiff Exhibit 3 of handcuffed picture of a student demonstrates the alternative plan of GWU had I refused to cooperate.

Relevant Exhibits : #11 : Korman's e-mail
                              #12 : Picture of Saha's Car
                              #3   : Typical scenario when subjects do not obey GWUPD

*Debabrata Saha*

DEBABRATA    SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

*Daria G McGeehan*
Notary Public

My Commission Expires *12-31-07*
Notary Registration No. *121114*

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES *12-31-07*

61

**Plaintiff Exhibit 3**

- Hatchet Centennial
- Hatchet Alumni

- Blog

    - Hatchet Blog
    - Sports Blog
    - SA Blog
    - Sex Blog

- Podcast

Search...    ➡

Home > Campus News

# GW students arrested while protesting workers' rights

ClGuide
Summer 2007

**by Gabriel Okolski**

**Issue date:** 4/1/04 **Section:** Campus News
A group of GW students Tuesday called on the University to drop charges against 11 demonstrators who were arrested while trying to occupy the Marvin Center earlier in the week.

In a rally outside Rice Hall, about 30 students also urged GW to increase its employees' salaries and health benefits and join the Workers' Rights Consortium, an oversight group that ensures companies aren't violating labor laws.

"We're here today to support our students and demand that the University drop its charges," said junior Timothy Kaldas as he stood in front of the building that houses the office of GW President Stephen Joel Trachtenberg.

The arrest of nine GW and two Georgetown students and would not deter activists from demonstrating for greater worker compensation, junior Alex Freedman, who was not detained in Monday's protest.

"We will continue to carry out our campaign with an even louder voice," she said.



Media Credit: Paul Goodman

University officials reached for comment Wednesday afternoon said they were unsure whether GW would agree to drop unlawful entry charges against the students.

While the Marvin Center is a public venue, refusing to vacate any piece of University property constitutes unlawful entry, according to the Student Code of Conduct.

At 1 p.m. Monday, students gathered in the Marvin Center Great Hall and set up tents, saying they would occupy the space until the University met their demands. About 45 minutes later, MPD arrested 11 students, including two from Georgetown University, for refusing to comply with GW's order to leave the building.

http://media.www.gwhatchet.com/media/storage/paper332/news/2004/04/01/CampusNews/Gw.Students....    8/15/2007

# United States District Court
# For The District of Columbia

------------------------------------------------------

**Debabrata Saha,**

   **Plaintiff,**

v.                                                    Civil Action No. 1:06-01493 (RCL)

**Donald Lehman, Timothy Tong, and**
**The George Washington University**

   **Defendants**.

------------------------------------------------------

## Affidavit #7 : On the Credibility of Defendant Lehman and GW Counsel Mishkin

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

## Background :

   After embarrassing, humiliating, and violating Civil Rights on Sept 1st and Sept. 2nd of 2005 (as complained by the Plaintiff ), Defendants Lehman and Tong initiated the process of revoking Plaintiff's tenure. Plaintiff Exhibit 13 & 14 are the suspension letter and the complaint for tenure revocation; these two, when read in chronological order, give the gist of Defendants' attempt that led to faculty senate hearing. Sub-sections A, B, C and D outlined below are derivatives of that hearing led by Joan Schaffner of GW Law School. Affidavit 12 is submitted as the supporting evidence.

# A. Flip-flop : Credibility of VP Lehman and GW Counsel Mr. Mishkin

**Feb. 21, 2006**
In a written statement (GW Hearing Brief, Plaintiff Exhibit 15 ) dated Feb. 21, 2006 VP Lehman wrote :

#23.
On June 15, 2005, Professor Zaghloul, Korman and Wasylkiwskyj and Dean Tong met with me to present the unanimous resolution of the Personnel Committee that had been approved on May 2, 2005. That resolution found Professor Saha to have violated two

provisions of the faculty code constituting revoking tenure for "adequate cause." **I was struck by the resoluteness of the Personnel Committee's action.**

**March 6, 2006**

In the hearing, GW administration (Lehman, Tong and Zaghloul ) testified on the issue of May 2nd, 2005 meeting.

**March 9, 2006**

On March 9, GW Counsel Douglas Mishkin, on the importance of May 2nd meeting, wrote (Plaintiff Exhibit 16) :

"As is evident from their written statements (as well as from Dean Tong's responses to Mr. Karl's questions), Executive Vice President Lehman and Dean Tong were and are satisfied that the May 2nd meeting of the Personnel Committee provided them with appropriate input from the Department in making their decision to file the complaint seeking the revocation of Professor Saha's tenure. Executive Vice President Lehman will re-affirm that sentiment if questioned about it by Mr. Karl."

**March 14, 2006**

In the March 6 hearing, GW administration (Lehman, Tong and Zaghloul ) failed to provide evidence that Prof. Saha received the notice of May 2nd, 2005 meeting. On March 14, the panel deliberated and decided to strike the May 2nd, 2005 meeting and the vote of the faculty at that meeting from the record (Plaintiff Exhibit 17) .

**March 20, 2006**

VP Lehman testified on March 20 on the issue of May 2nd, 2005 meeting. His testimony is well summarized by Chair Schaffner in the following response to a question from Prof. Saha's counsel, John Karl ( Plaintiff Exhibit 18) :

**Hearing Chair Schaffner** :  I think you (i.e. Karl) have already asked what the significance of the May 2nd meeting was, and I think he (i.e. Lehman) already testified that it wasn't in his belief, so I think that has been asked and answered. (ref. Transcript p-45, March 20, 2006).

The only conclusion one can draw from the above sequence of events is ***that VP Lehman and Mr. Mishkin flip-flopped after the panel deliberated and decided to strike the May 2nd, 2005 meeting and the vote of the faculty at that meeting from the record.***

More irony is that Schaffner panel did not have any objection  to such flip-flop though Chair Schaffner, on the Notice Issue, on March 6, went on to say :    *"We*

*understand that is perhaps more relevant to our considerations than sort of this just traditional notice ----if he (i.e. Plaintiff Saha) didn't have notice, he lacked due process, and therefore, we can't even really revoke tenure during this proceeding ------"* (Plaintiff Exhibit 19, Transcript 03/06/2006 at p.396).

**Thus VP Lehman and Mr. Mishkin flip-flopped. Also, the hearing was initiated via a fraudulent process, because without the May 2nd meeting VP Lehman wouldn't have faculty input in his June 15 meeting, and wouldn't write June 27 & July 26 letter to Prof. Saha and wouldn't finally write Sept. 16, 2005 complaint for tenure revocation.**

# B. Falsification of Evidence by Mr. Mishkin (GWU)

GW Counsel Mr. Mishkin falsified a document which, in the assessment of GWU, was very important for making a decision towards revoking tenure of Prof. Saha.

The falsified document as well as the original will be made available upon request of the court.

# C. Credibility of Lehman :

- **June 27 & July 26, 2005 Letters :** During GW Faculty Senate Hearing, Lehman was extensively questioned on the issue of these two letters and Lehman confessed that he knew Prof. Saha did not receive those certified letters, and those two letters were found returned to GWU (Re. Plaintiff Exhibit 7). Thus Lehman was disingenuous in writing the August 29, 2005 suspension letter that led to tenure revocation hearing. Plaintiff Saha request the court to consider this evidence to asses the credibility of Defendant Lehman.

- **February 5, 1997 Letter :** Plaintiff asserts that upon request of the court, evidence will be introduced to establish that in the past, Lehman administration played foul with the delivery of February 5, 1997 suspension letter which lead to a false arrest in 1997.

# D. Fraudulent Hearing

- By allowing the deliberation, Schaffner Panel directly contradicted Schaffner's own Statement : *"--if he (i.e. Plaintiff Saha) didn't have notice, he lacked due process, and therefore, we can't even really revoke tenure during this proceeding ----"* (Plaintiff Exhibit 19).

- Hearing was procedurally illegitimate not only because of "Lack of May 2nd, 2005 notice" issue but also due to Lehman's deceitful August 29, 2005 suspension letter

which he wrote after knowing Prof. Saha did not receive his June 27 & July 26, 2005 letters.

- Any claim of Lehman and Tong that they did not resort to faculty input lacks merit as explained previously under "Flip-flop". The explanation is more strengthened by the revelation from the testimony (Plaintiff Exhibit 41) that the two allegations Lehman and Tong brought against Saha and deliberated on by Schaffner Panel are identical in words to the allegations of four Professors of ECE Department who remained detached from Saha over many years since 1996 scandal.

*The Plaintiff argues that Defendants (GWU) initiated the faculty hearing through a fraudulent process, rigged the outcome of the panel deliberation against the Plaintiff and used that deliberation to strengthen their arguments for the Summary Judgment.*

Relevant Exhibits  7 : Excerpts from Hearing Proceedings
                  13 : Letter of Lehman, August 29, 2005
                  14 : Tenure Revocation Complaint, Sept. 16, 2005
                  15 : GW Hearing Brief
                  16 : GW Counsel Mishkin's e-mail
                  17 : e-mail of Schaffner regarding May 2nd, 2005 meeting
                  18 : Hearing Transcript, March 20, 2006
                  19 : Hearing Transcript, 03/06/06, p-396
                  41 : Testimony, p.17, 18, Hearing Proceedings. Jan. 30, 2006

*Debabrata Saha*
DEBABRATA SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

*Daria G McGeehan*
Notary Public

My Commission Expires *12-31-07*
Notary Registration No. *121114*

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 12-31-07

# United States District Court
# For The District of Columbia

---------------------------------------------------

Debabrata Saha,

**Plaintiff,**

v.                                                      Civil Action No. 1:06-01493 (RCL)

**Donald Lehman, Timothy Tong, and**
**The George Washington University**

**Defendants**.

---------------------------------------------------

## Affidavit #8 : On Motives and Behavioral Tendencies of the Defendants

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

In support of Motives and Behavioral Tendencies of the Defendants, I submit as Plaintiff Exhibit 20, the Academic Paper : *"Still Teaching is noble in America !"* by Debabrata Saha, The George Washington University, 801 22nd Street, N.W., Washington, D.C. 20052, U.S.A., November 14, 2006. It should noted that this academic paper was written within the guidelines of Academic Freedom and honoring the fact that GWU Faculty Senate Hearing materials constitute public information.

Relevant Exhibit   20 : *"Still Teaching is noble in America !"*

Debabrata Saha
DEBABRATA    SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

Notary Public

My Commission Expires  _12-31-07_
Notary Registration No.  _121114_

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES _12-31-07_

# United States District Court
# For The District of Columbia

---------------------------------------------------

**Debabrata Saha,**

     **Plaintiff,**

**v.**
                             **Civil Action No. 1:06-01493 (RCL)**

**Donald Lehman, Timothy Tong, and
The George Washington University**

     **Defendants.**

---------------------------------------------------

## Affidavit #9 : On 1996 GWU Qualifying Exam Scandal and Whistle Blowing

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

    As supporting documents to dispute the material facts of the Summary Judgment, I hereby attach as Plaintiff Exhibit 21 "the 37-page document" On 1996 GWU Qualifying Exam Scandal that was submitted by the Plaintiff to Wooldridge-Ramakar Committee in 1997. Also attached is "a set of evidence on the Qualifying Exam Scandal " as Plaintiff Exhibit 22.

Relevant Exhibits  21: Saha's Report to Wooldridge-Ramakar Committee in 1997
                       22: A set of evidence on 1996 Qualifying Exam Scandal

Commonwealth of Virginia
County of Fairfax , to wit :
                                          *Debabrata Saha*
                                         DEBABRATA SAHA

Sworn, subscribed, and acknowledged before me by Debabrata Saha on November 02, 2007.

                                         *Daria G McGee*
                                         Notary Public

My Commission Expires *12-31-07*
Notary Registration No. *121114*

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 12-31-07

# United States District Court
# For The District of Columbia

---------------------------------------------------

Debabrata Saha,

     **Plaintiff,**

v.

                                     **Civil Action No. 1:06-01493 (RCL)**

Donald Lehman, Timothy Tong, and
The George Washington University

     **Defendants**.

---------------------------------------------------

## Affidavit #10 : Disputing the wrongful portrayal of the Plaintiff as violent

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

     The Defendants, in their motion for summary judgment (MSJ), and in their actions of parading Professor Saha twice using security police officers firmly tried to portray Professor Saha, the Plaintiff, as a violent person. The following comments of the Defendants substantiate that fact.

1. Line 3-7, p-2 of 13, part-1 of MSJ
2. Line 8-9, p-2 of 13, part-1 of MSJ
3. Line 10-12, p-2 of 13, part-1 of MSJ
4. Line 2-4, p-3 of 13, part-1 of MSJ
5. Line 3-5, p-9 of 13, part-1 of MSJ
6. Item #4, Statements of Undisputed Material Facts, part-6 of MSJ
7. Item #11, Statements of Undisputed Material Facts, part-6 of MSJ
   (This is an attempt of portraying plaintiff as a violent criminal through falsification of facts; ref. to Affidavit #6).
8. Item #17, Statements of Undisputed Material Facts, part-6 of MSJ
   (Barring a faculty member from the campus without any prior communication and due process, and then escorting him out of Academic Center by "Perp Walk" was GWU's desperate attempt of creating a criminal like image of the Plaintiff).
9. Item# 8, Tong's declaration, part-10 of MSJ.

**The Defendants failed** to give any evidence to support the violent image they portrayed. To dispute such portrayal, I like to state the following.

(1) I consider myself anything but violent. I never possessed any fire arm. In my whole life, from childhood till today, I never touched any fire arm, not even for the sake of touching it.

(2) Even though I was active in student politics in my youth and elected twice the President of Students' Union during my post graduate years, I have never been blamed for raising hand or throwing a punch.

(3) In my history at the George Washington University since my joining in Fall 1986, there has not been a single incident that can be labeled as having the touch of violence. The only incident in which I ***deliberately*** raised my voice only once was on January 27, 1997. It was when papers and documents posted on my office door were secretly removed after I exposed the corruption and dishonest academic practices in the School of Engineering and Applied Science. I raised my voice and called the then Chairwoman Professor Mona Zaghloul of EECS a Liar; I called her Liar maintaining the same literal meaning of the word "Liar", people use in any civilized society. I ***deliberately*** raised my voice in my conversation with a secretary at the front desk not to make her angry but to draw the attention of the University Administration. And I succeeded in my attempt; after I raised my voice, President Stephen Joel Tranchtenberg met me on a one-to-one basis and **declared my action as Whistle Blowing; he called me a man of principle and asked me not to speak to Chairwoman Zaghloul and a few of her associates.**

(4) I also defended my raising voice to Defendant Lehman (then VP) upon arguing that when there was no other alternative, raising voice was justified to protest **against the moral bankruptcy (of Defendant Don Lehman and his associates).** It was justified for the sake of fairness and integrity in the academic process. I also told Lehman in that conversation : "God has given us voice not for just two purposes : beating one's wife after getting drunk or shouting one's lung out in Church choir, there are other legitimate usage of raised voice"

It should be noted that though Lehman ( then VP) administration made a big noise about my raising voice (for only a few moments), Wooldridge-Ramaker Committee which investigated the incident in 1997 reported :

▪ **Not one of the office staff felt threatened by violence or endangered in any way. Indeed Ms. Edwards (i.e. the secretary at the front desk, the only person with**

whom Plaintiff Saha had the encounter) indicated Professor Saha was polite and even waited for me (her) to get off the phone before he asked his initial question.

After the January 27, 1997 incident, President Stephen Joel Tranchtenberg, in his one-to-one meeting with Professor Saha, told him that *the administration should have sent him (i.e. the Plaintiff) a "Thank You Letter" for his (i.e. Plaintiff's) role in that matter,* while Defendant Lehman and his associates, after seeing their moral bankruptcy being exposed to the students and the community, took the path of **Character Assassination** : series of exhibits and events that follow are vivid description of how systematically Defendant Lehman and his administration firmly tried to portray the image of Professor Saha as that of a Very Violent person. *It should be noted that Defendant failed to give a single piece of evidence that support the violent tendency of Plaintiff.* In the motion for Summary judgment the Defendants offered only rumor and innuendoes; in this context *it is very important to note that Defendant Tong never met Professor Saha even once* before he helped carrying out the Police Actions on Sept. 1st and 2nd, 2005.

## Events and Exhibits in support of  Character Assassination by GWU :that opposes GWU's motion  while supports Plaintiff's Demand for Punitive and Compensatory damages

(1) May 15, 1996 : Prof. Saha through his "Dear Colleague Letter" (Plaintiff Exhibit 23), exposed the wrong doings of GWU that compromised the integrity of Academic processes. Plaintiff Exhibit 24 explains how GWU tried to cover up.

(2) August 22, 1996: Prof. Bhagi Narahari, a colleague of Prof. Saha, scheduled a meeting with Prof. Saha at 3:00pm in Prof. Saha's office to warn him; in that meeting Prof. Narahari cautioned Prof. Saha :
     **" ......I don't want you to be in any kind of trouble; they are trying to put you over the edge so that you make mistake and they take action against you".**

Prof. Sam Rotenstreich later joined the meeting and expressed his concern as well.

(3) Till Fall 2005, I was not aware why Prof. Narahari and Prof. Rotenstreich were so concerned; their concerns were in their voice. It is the Sept 2nd, 2005 e-mail of Defendant Lehman (Plaintiff Exhibit 25 ) that revealed why they were concerned. GWU was planning for installing Panic Buttons on the cause of Prof. Saha to hype the rumor of Violent Character of Prof. Saha and create tension to cover up **the Disgrace they brought on Academy of Higher learning in the Capitol of the Nation.** This is one of the

**dark secrets** that got revealed through the Discovery Process during Senate Panel Hearing.

It should be noted that former President Stephen Joel Trachtenberg in his address to the Board of Trustee, on May 19, 2006 acknowledged **dark secrets** of the George Washington University [Plaintiff Exhibit 47].

(4) A strong set of evidence that **epitomizes GWU's attempt of Character Assassination** is the July 31, 1997 Memo of Zaghloul (Plaintiff Exhibit 26). In this memo **Prof. Zaghloul and Prof. Pickholtz** (two dishonest stalwarts of 1996 Qualifying Exam Scandal) tried to draw parallelism between the conduct of Prof. Saha and that of the **Mass Killer at the Concordia University.**

(5) Plaintiff Exhibit 27, 28, 29, 30, 31, 32, 33 describe series of attempts by GWU authority during the years of 1996-1999 in attributing to the conduct characteristics of Prof. Saha that deserves police watch and security concerns, or in other word, attempts of attributing violent image to his conduct characteristics. The Defendants did not provide any evidence to substantiate their attempts of such attributions. **Exhibit 30, an e-mail of Prof. Shelly Heller, is a circumstantial evidence of their intent to harm the Plaintiff.** Plaintiff Exhibit 27 establishes further attempt of GWU in attaching a violent image to the character of Prof. Saha.

(6) In support of GWU's attempt of Character Assassination, I like to refer to some comments made by Prof. Doroslovacky of ECE Dept. In a telephone interview with Dr. John F. Karl, Prof. Saha's former Counsel, Prof. Doroslovacky stated unequivocally that some faculty as well as some staff members used to gossip behind Prof. Saha in the hallways and common public places on the sixth floor in Academic Center that would contribute negatively on Prof. Saha. Plaintiff Exhibit 42 (testimony of another faculty member) corroborates Doroslovacky's comments and establishes once again GW's wrongful attempt of contributing violent tendencies to the conduct characteristics of Prof. Saha.

(7) Another example is the following excerpt from Chair Korman's Sept. 2nd, 2005 e-mail:

_____

CONFIDENTIAL

Don and Tim,
I am seriously concerned about the safety of my faculty, staff and students. The UPD today failed to do its job, and the ECE 243 students were unnecessarily exposed to situations that are unprofessional, embarrassing and frightening. .........

........Around 7:25PM Thursday night, I was at my chair's office working with our Executive Associate Alison Mayhew, who was in her adjacent office. She ran into my office somewhat shaken as she observed Prof. Saha casually open the department front office door (our main front lock has still not been changed and Prof. Saha still has his office key that can open the front department door). There was no police escort with Prof. Saha...........................................................................................................................................

*(I need not remind you of his past violent behavior towards ECE faculty and staff) I immediately instructed Ms. Mayhew to close the chair office door and we waited for about 5 minutes. We stopped our work UNFINISHED and decided to sneak out of the department. I slowly opened door of the chair's office, made sure that the coast was clear, escorted Ms. Mayhew to the elevators and we quickly exited the Academic Center.........*

.........

Can

_____

Again here, GWU administrator Korman , with respect to Plaintiff Saha, referred to *his violent behavior towards ECE faculty and staff*. GWU, so far, failed to give as evidence a single incident that involved Prof. Saha and Violence mixed together. In the last paragraph above (italic bold), Chair Korman not only made an attempt to Assassinate the character of Prof. Saha, but also found pleasure in portraying himself as a hero, such as one who took the risk of his life to save her heroine (here Secretary Mayhew) from a heinous murder plot orchestrated by a known murder (here Plaintiff); at the end, however, Korman did indeed left his romantic touch when we find both hero and heroine fled away from Academic Center for peaceful shelter.

**(8) Character Assassination and then perjury to cover up (by Professor Murray Loew of GWU):**

Plaintiff Exhibit 34 is the minutes of Feb.9, 2005 secret faculty personnel committee meeting; Prof. Murray Loew's comment is the attempt of assassination of Plaintiff's character. It should be noted that the whole plot of tenure revocation originated in this SECRET meeting.  Plaintiff Exhibit 35, which is part of Loew's testimony in Faculty Senate Hearing  is the perjury. The two documents together provide proof beyond any doubt for the attempt of **Character Assassination by GWU.**

(9) Half-hearted Discovery during Senate Hearing revealed an August 20, 1996 memo (Plaintiff Exhibit 36) with a note of Chairwoman Zaghloul that authorized purchase of two panic buttons after Saha's role in Qualifying Exam Scandal. She lodged a campaign to establish a violent image of Prof. Saha and deployed  panic buttons  in her office area to hype that alleged image.

73

I came to know about the existence of these panic buttons only in Fall 2005 after reading an e-mail of Defendant Lehman. *GWU never used these panic buttons in last one decade for any cause related to Prof. Saha.*

A complete list of other Relevant Exhibits are following :

1. Plaintiff Exhibit 23 : April 15, 1996 Dear Colleague Letter of Saha
2. Plaintiff Exhibit 24 : May, 1996 letter of Saha to VP Linda Salamon
3. Plaintiff Exhibit 25 : Lehman's Sept. 2nd, 2005 e-mail on panic button
4. Plaintiff Exhibit 26 : July 31, 1997 Memo of Zaghloul
5. Plaintiff Exhibit 27 : August 8, 1997 Memo of Interim Dean Mazzuchi
6. Plaintiff Exhibit 28 : Feb. 4, 1997 Memo of Zaghloul
7. Plaintiff Exhibit 29 : Police Complaint of Zaghloul dated 02/06/97
8. Plaintiff Exhibit 30 :  Shelly Heller's e-mail to Lehman
9. Plaintiff Exhibit 31 : Jan. 11, 1999 Memo to Univ. Police
10. Plaintiff Exhibit 32 : Jan. 25, 1999 Memo of Loew
11. Plaintiff Exhibit 33 : Jan. 25 and Feb. 23, 1999 Memo to Rocco Grande, UPD
12. Plaintiff Exhibit 34 : Minutes of Feb.9, 2005 meeting
13. Plaintiff Exhibit 35 : Transcripts of Murray Loew's Testimony
14. Plaintiff Exhibit 36 : August 20, 1996 letter to Zaghloul
15. Plaintiff Exhibit 42 : Testimony, p.138 &171, Transcript, Jan. 30, 2006 Hearing

Commonwealth of Virginia
County of Fairfax , to wit :

*Debabrata Saha*

DEBABRATA  SAHA

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

*Daria G. McGee*
Notary Public

My Commission Expires *12-31-07*
Notary Registration No. *121114*

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 12-31-07

# United States District Court
# For The District of Columbia

---------------------------------------------------

**Debabrata Saha,**

     **Plaintiff,**

**v.**                                 **Civil Action No. 1:06-01493 (RCL)**

**Donald Lehman, Timothy Tong, and
The George Washington University**

     **Defendants**.

---------------------------------------------------

**Affidavit #11 : On the 1999 Conspiracy by Defendant Lehman and FALSE charge
of Scientific Misconduct against Plaintiff.**

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my
knowledge, information and belief the following.

     As supporting documents to dispute the material facts of the Summary Judgment
and establish the motives and behavioral trends of the Defendants, I submit following :

## 1999 Lehman-Loew conspiracy

     After submitting the final grades of Fall 1998, Prof. Saha prepared the handouts of
the three courses : Mon-EE203(10), Wed-EE242(10), Thurs-EE242(VA) that he was
scheduled to teach for Spring 1999; then he went out of the country to visit his parents. He
came back in the weekend before January 11, 1999, the first day of the class. He went to
give the first lecture of EE-203(10) in Tompkins Hall on Monday evening and he was told
to go to VA campus to teach EE-211, a course which he never taught before and was not
in his area of expertise. The following day Tuesday he was scheduled to teach another new
course EE-248 which he never taught before (Plaintiff Exhibit 37). Prof. Loew, the then
Chair of the Department, changed the teaching schedule once again; by the end of first
week, Prof. Saha was scheduled to teach three new courses that he hadn't taught before
and only one course that he taught before. Also these changes were not communicated to
Prof. Saha in timely fashion; as a result when Prof. Saha failed to show up in the class,
Vice President Lehman used that excuse to suspend Prof. Saha on Jan 22, 1999.

After the suspension became effective, Prof. Lehman brought charges of plagiarism and scientific misconduct against Prof. Saha to have some leverage in quieting Prof. Saha. After intervention of President Trachtenberg, investigation was launched and **Plaintiff Lehman was forced to drop the charge of plagiarism, and, as per Lehman, the case of Scientific Misconduct was closed.**

After the suspension on the charge of neglecting teaching responsibility, the EECS personnel committee investigated the matter and acquitted Prof. Saha of any wrong doing; the committee even asked GWU to pay salary for the months Prof. Saha was suspended. Plaintiff Lehman reinstated Prof. Saha but refused to pay.

Charges of plagiarism and scientific misconduct in 1999 affected Prof. Saha's research profoundly. Prof. Saha now keeps all his research related matters only confined to himself. The research on Information Theory he has been carrying out for some years is now not shared with any body but himself and he will continue to do so till he finishes the work up to his satisfaction. It should be noted Lehman testified (in GW Senate Hearing) that he did not take any step to repair the professional reputation of Prof. Saha even after the case of Scientific misconduct was closed.

VP Lehman didn't stop there, he used the suspension and the charge of plagiarism and scientific misconduct to twist arms and blackmail Prof. Saha in 1999 to sign a contract with eleven conditions which contradict the usefulness of the faculty code. For a tenured faculty member such as Prof. Saha, any attempt of replacing faculty code by a contract designed by an administrator without any due process should be considered a violation of the Contract bound through faculty code because the faculty code does not have any provision that allows the binding agreement for a tenured faculty member to be anything but the faculty code and the faculty handbook.

Relevant Plaintiff Exhibit 37: Jan. 8, 1999 letter signed by Mazzuchi and Loew & Jan. 15, 1999 letter of Loew

Commonwealth of Virginia
County of Fairfax , to wit :

DEBABRATA    SAHA

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

_____
Notary Public

My Commission Expires *12-31-07*
Notary Registration No. *121114*

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES *12-31-07*

76

# United States District Court
# For The District of Columbia

-----------------------------------------------------

Debabrata Saha,

      Plaintiff,

v.                                                                Civil Action No. 1:06-01493 (RCL)

Donald Lehman, Timothy Tong, and
The George Washington University

      Defendants.

-----------------------------------------------------

## Affidavit #12 : on procedurally illegitimate Faculty Senate Hearing and flawed deliberation *of Schaffner Panel*"

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

      As supporting documents to dispute the material facts of the Summary Judgment, I submit as Plaintiff Exhibit 38, the Academic Paper : *"A Compelling Account : Flawed Deliberation of Schaffner Panel"* by Professor Debabrata Saha, The George Washington University, 801 22nd Street, N.W., Washington, D.C. 20052,U.S.A., December 12, 2006 It should noted this academic paper was written within the guidelines of Academic Freedom and honoring the fact that GWU Faculty Senate Hearing materials constitute public information.

Relevant Plaintiff Exhibit 38 : *"A Compelling Account : Flawed Deliberation of Schaffner Panel"*

Commonwealth of Virginia           *Debabrata Saha*
County of Fairfax , to wit :           DEBABRATA SAHA

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

                         *Daria G McGeehan*
                            Notary Public

My Commission Expires *12-31-07*
Notary Registration No. *121114*

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES *12-31-07*

# United States District Court
# For The District of Columbia

---------------------------------------------------

**Debabrata Saha,**

    **Plaintiff,**

v.                                                    **Civil Action No. 1:06-01493 (RCL)**

**Donald Lehman, Timothy Tong, and**
**The George Washington University**

    **Defendants**.

---------------------------------------------------

## Affidavit #13 : On Retaliation by Defendants Lehman, Tong and GWU

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

As supporting documents to dispute the material facts of the Summary Judgment and establish the motives and behavioral trends of the Defendants, I submit following list:

# Itemized list of Retaliations by GWU

- In one morning during Christmas period of 1996, a blood-tainted copy of my own GW memorandum (the "Dear colleague letter" of May 15, 1996, Exhibit 23 )  was found at the door step of my residence at 2947 Waterford Court, Vienna, VA where me and my wife used to live with two small children.

- We moved to a different neighborhood.  During the period of 1998-2003, GWU sent people to our residence at 9409 Fairpine Lane, Great Falls, VA to post open letters and memorandum on our front door, garage door, and garbage container; they also made disturbing noise on our private property on several occasions.

- In the office at the Academic Center, I was ex-communicated and treated with social isolation : no invitation to social gathering, no invitation to any seminar, no news about hiring and new addition to faculty, no news about passing away of colleagues (I got to

know passing away of Jean Liebowitz, who hired me, two three years after his death), **not a single knock on my door for social interaction over a period of ten years** (except three or four knocks by Prof. Lang during his chairmanship for official matters only), total exclusion from thesis committees, total exclusion from contributing questions for the qualifying exams,  total exclusion from department and school committees (though in the faculty hearing the Defendants produced only one evidence of committee assignment for one particular year), (as per statements of some faculty members) spreading rumors and gossips behind my back in an attempt to tarnish my image and reputation.

- Systematic acts of discriminations  and ex-communication to ostracize me in the working place. After the whistle blowing, GW administration isolated me from advising doctoral students; most of the students were not taken care of; some of them went to other school to get Ph.D. and some of them discontinued. GW administration purposely implemented this to hurt my resources for research and professional development.

- Before the 1996 Qualifying Exam scandal, I used to advise about 110 undergraduate students and about 55 graduate students. After the whistle blowing, GW administration took away advising responsibility of each and every student; they thus isolated me from the student community.

- **1999 Conspiracy : 1999 Lehman-Loew conspiracy** ( Affidavit # 11)
- **2005 Conspiracy : Sequence of Events that tainted the due process** ( p. 8, Plaintiff Exhibit 20)
- After the whistle blowing Prof. Saha has been suspended in 1997, 1999, 2003 and 2005. Four suspensions over eight years by VP Lehman shows a pattern of retaliation. Most importantly, suspensions were followed by reinstatement without due process or any apology;  in some situations VP Lehman had to drop the charges in writing. Capricious disciplinary actions of Lehman administration succeeded in keeping Prof. Saha in constant fear and worry about the timing of next Lehman striking.
- Last time I took sabbatical leave was in 1993-94; I am entitled to more sabbatical leave. Yet I am afraid to apply for because of  possible capricious retaliatory actions by Lehman in my absence.
- Instead of punishing the characters behind 1996 Qualifying Exam Scandal, GW administration awarded them with Chair position **(Loew, Vojcic, Zaghloul)**
- Lehman refused to give me any raise in salary for a decade (1996-2006).
- GW spread rumors of possible violence and physical threat from Prof. Saha and secretly installed panic buttons in two locations to hype the rumors (Affidavit# 10).

- Secretly tried to establish doubts about Prof. Saha's mental fitness. Prof. Murray Loew tried that in Spring of 1996 and was thrown out of Prof. Saha's office. Once again Loew tried that in February 9, 2005 ECE meeting that was held secretly (Affidavit# 10).

- Assigning more classes to VA campus to isolate Prof. Saha from main campus and creating harassment for Prof. Saha on a regular basis in that campus. The ordeal of Virginia Campus can be best described as **intellectual style execution of minds, tenacity and will power of retaliated faculty member(s)** (Affidavit# 14).

- Harassment by abrupt changes in teaching schedule without giving any time to prepare.

- Eliminating Prof. Saha's course on Probability Theory and giving it to Prof. Pickholtz, taking away directorship of other courses. Removal from teaching a course on Information Theory (EE-241) and replacing Prof. Saha by a part-time/visiting faculty member, though Prof. Saha was the course director and had been teaching it for ten years.

- Refusal to give grade sheets for the courses he taught in the VA campus; Prof. Saha often had to create grade sheets of his own to avoid inconvenience of the students.

- Censoring mail and creating a secret mail box in VA campus to divert mail.

- Discriminating Prof. Saha through exclusion from all ECE departmental committees.

- Continued discrimination (since Fall 1993) through exclusion from the tenure personnel committee of ECE/EECS department.

- Conspiracy for retaliation : Lehman and Tong administration revealed that they have at their disposal many letters that were written for themselves only to create a record for action against Prof. Saha; the contents of the letters are false and were never shared with Prof. Saha. GWU failed to produce an important letter written by Lehman even after request from the faculty hearing committee.

- Retaliation and unethical misconduct : VP Lehman refused to follow the faculty recommendation of paying Prof. Saha his salary during the suspension period of Jan.22-March31, 1999 though Lehman had to reinstate Prof. Saha after being unable to prove the validity of his allegation.

- Day-to-day harassment : (a) Lights in Prof. Saha's office were not fixed for years after repeated request, (b) Administration assigned classrooms of inadequate size with no usable board; in one semester Saha had to use seven classrooms (on empty basis) to complete the semester (c) Saha's office was opened and used by others without his permission or knowledge; in one occasion the room walls were littered with some reddish substance that had to be cleaned and disinfected by maintenance (d) Saha's picture was removed from ECE display board.

- In 1999, after the reorganization of former EECS Department, Prof. Saha's office was moved to another room without his knowledge; many documents are unaccounted for.





Relevant Plaintiff Exhibit 10 : Class list, students attended Saha's ECE-243, Fall 2005

                     20 : *"Still Teaching is noble in America !"*

                     23 : May 15, 1996 Saha's "Dear Colleague Letter " & April 16, 1996 Memo of Zaghloul

                     49 : Debby (Swanson)'s August 29, 2005 statement

                     50 : August 29, 2005 e-mail of Korman and others

                     51 : Jan. 30, 2006 Testimony of Korman

                     52 : Jan.4, 2002 Memo that in Fall 2005 revealed the existence of a Secret Mail Box designated for Saha

                     53 : Saha's Fall 2007 GW Office address, Ph. no., emergency contact, Faculty Detail Schedule

                     54 : Jan. 18, 2002 Memo of Marshall & Jan. 22, 2002 Memo of Vojcic

Relevant Affidavits : 10, 11, 14

*Debabrata Saha*
DEBABRATA    SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on November 02, 2007.

*Daria G McGeehan*
Notary Public

My Commission Expires *12-31-07*
Notary Registration No. *121114*

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES *12-31-07*

# United States District Court
# For The District of Columbia

-------------------------------------------------

Debabrata Saha,

     **Plaintiff,**

v.

                                       Civil Action No. 1:06-01493 (RCL)

Donald Lehman, Timothy Tong, and
The George Washington University

     **Defendants**.

-------------------------------------------------

**Affidavit #14 : On Irregularities in VA Campus as it affected the Plaintiff**

I, Debabrata Saha of 9409 Fairpine Lane, Great Falls, VA-22066 do hereby state to my knowledge, information and belief the following.

As supporting documents to dispute the material facts of the Summary Judgment and establish the motives and behavioral trends of the Defendants, I submit the following list.

## List of Improper Activities in the GW Virginia Campus:
### Execution of minds, tenacity and will power of retaliated faculty member(s) in Intellectual Style !!

- I directly and personally observed the following over a  period of Five Years (1999-2004)

- **Wining and dining in my scheduled classroom** : had to give lecture in a different room; a student who was working for the Navy brought me back to the classroom to point out open wine bottles on many tables. From the appearance the dinner didn't seem to be cheap after all; looked like GWU always maintains class even when it does illegal things; **serving alcohol in University activities in classroom is illegal**.

- I remember another occasion when plenty of food such as baklava, cakes, cookies, drinks and plates were scattered on tables all around the room; we had to clean the room, arrange the tables and chairs before I could start the lecture.

- Frequently classrooms were locked; I and the students had to search for administrative personnel to open the room; on many days we ended up spending 10/15 minutes of lecture time in doing such things the responsibility of which lies with the administration.

- Without any list of students, I had no way of knowing whether I was dealing with a registered student, a terrorist or a spy.

- The most obscene was the refusal to give the "Grade Sheets" for almost three years or so; I had to type out the name and social security number information (collected from the students) and use that print out to submit the final grades. The Registrar's office has documentation of all these grade sheets. It is possible, though I am not claiming so, that other parties manipulated the grades and/or took credit for teaching that course; but it is just a speculation.

- In two consecutive semesters, on each and every scheduled lecture day, the tables, the chairs and everything else were intentionally kept in haphazard condition so that it took 10/15 minutes of manual labor to fix them. I had to arrive there early to take care of these things.

- On numerous occasions, when the students went out during the five minute break in the lecture, they couldn't come back because the doors were locked on all entrances.

- They fabricate the number of real committed enrollments in courses; in one semester the class ended with only one student.

- The administration, particularly the registrar, has been notified about some of these things. Nothing has been taken care of.

- The final exam of Spring 2004, ECE-243(AL) was on May 4, Tuesday, 2004. On that day the classroom was locked; student Navneet Singh went to call logistic people; they said there was no room on the schedule for ECE-243(AL). However, after some waiting one person came and opened the door.  This was the state of affairs on a frequent basis.

- It was very inconvenient and disturbing that in may occasions courses scheduled by Foggy Bottom administration to be taught in the Virginia campus were canceled by the Virginia campus administration without any prior notice to the faculty member and  in some situation the course continued even though it was canceled by the Foggy Bottom administration.

*Debabrata Saha*

DEBABRATA SAHA

Commonwealth of Virginia
County of Fairfax , to wit :

Sworn, subscribed, and acknowledged before me by Debabrata Saha on  November 02, 2007.

_____
Notary Public

My Commission Expires _/2-31-07_
Notary Registration No. _/21114_

DARIA G. MCGEEHAN
NOTARY ID # 121114
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES _/2-31-07_

84

## Certificate of Service

I hereby certify that a copy of the entire Response opposing Motion for Summary Judgment, dated November 8, 2007 was sent to the counsel of the Defendants to the following address. Also, I hereby request to make a note that I will be unavailable (for responding to any court action) during Dec. 15, 2007 through January 4, 2008 in connection with an overseas trip.

> Patton Boggs LLP
> 2550 M Street, N.W.
> Washington, D.C. 20037

Sincerely,

Debabrata Saha
Re: Civil Action No. 1:06-01493 (RCL)

November 8, 2007

85