UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Professor DEBABRATA SAHA, Ph.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-01493 (RCL) |
| ) | |
| DONALD LEHMAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on defendants' motion [25] for summary judgment. Upon consideration of defendants' motion, the opposition and reply thereto, the record herein, and the applicable law, the motion shall be GRANTED.

### I.  BACKGROUND

Pro se plaintiff Debabrata Saha is a resident of Virginia and was formerly employed as a tenured Associate Professor in the Department of Electrical and Computer Engineering ("Department") at George Washington University ("University").  Defendant Donald Lehman ("Lehman") is the Executive Vice President for Academic Affairs of the University and defendant Timothy Tong is Dean of its School of Engineering & Applied Science ("SEAS"). Defendant George Washington University has its principal place of business in the District of Columbia.  The facts giving rise to this matter stem largely from the events of September 1 and 2, 2005, when plaintiff was escorted from a classroom and from his office because he had been suspended.[1]  That suspension represented the fourth time in eight years that plaintiff had been

---

[1] Plaintiff contends that the background facts of his strained relationship with defendants actually date back to 1996 involving another dispute between plaintiff and the University over

suspended. (*See* Defs.' Mem. Supp. Summ. J. 1.) The University announced the suspension in a letter to plaintiff dated August 29, 2005. That letter informed plaintiff that his classes for the Fall 2005 semester had been reassigned and instructed him not to come to the University's campus to teach or perform any University responsibilities. (*See id.*, Ex. A, Letter from Donald R. Lehman to Debabrata Saha (Aug. 29, 2005).) The letter further informed plaintiff that Lehman intended to initiate tenure revocation proceedings against plaintiff in the very near future. (*See id.*) According to defendants, the letter was sent to plaintiff by regular mail, certified mail, by placing a copy under the door of plaintiff's office in the Department, and by hand via same-day courier service to plaintiff's residence.[2] (*See id.* at 2.) Based on the Department's prior history of difficulties involving plaintiff, defendant Tong arranged for plain clothes security officers to be present outside classrooms of the classes originally assigned to plaintiff in case plaintiff appeared for class despite his suspension.[3] (*See id.*)

---

concerns plaintiff raised about the University's doctoral program qualifying exam. Since the facts involving that dispute are not directly relevant to plaintiff's claims in the instant matter and for the sake of brevity, the factual background provided here will be limited to the facts surrounding plaintiff's August/September 2005 suspension and physical banishment from the University.

[2] Plaintiff apparently had a long track record of denying that he received any written communications from the University. During his tenure revocation hearing, plaintiff gave the following testimony: "Q: . . . is it basically your testimony that you have failed to receive any communications from the University since 1999? THE WITNESS: Not '99, I would say '97." (Defs.' Mem. Supp. Summ. J. 1–2, n.1 (quoting April 3, 2006 Hearing Tr. 234:10–14).) Defendant Tong testified that after plaintiff was suspended, when he asked plaintiff how he could communicate with him, plaintiff "gave [Tong] his home address but immediately said that—'Don't send me anything. It will get lost.' Then [Tong] asked for his phone number. He gave [Tong] his phone number, and immediately said, 'Don't call me.'" (*Id.* (quoting March 6, 2006 Hearing Tr. 439:1–16).)

[3] Defendant Tong's precautions were not unfounded as this was not the first time plaintiff showed up to teach class despite having been suspended. In 1997, plaintiff arrived to teach a


When plaintiff appeared in a classroom and began to teach ECE-243 on the evening of September 1, a University security officer advised plaintiff that he was not permitted to teach any classes and asked him to leave the classroom. At which time, plaintiff was escorted from the building by University security officers without incident. The following morning, plaintiff appeared in his Department office—again in violation of his suspension. University security officers entered plaintiff's office, informed plaintiff that he was prohibited from being on campus, and again escorted him out of the building without incident. Plaintiff claims that the August 29, 2005 suspension was never communicated to him. (*See* Pl.'s Opp'n 17.) He further claims that he relied on information posted on the Department's bulletin board indicating that he was the professor assigned to teach ECE-243 beginning September 1.[4] (*See id*.) Plaintiff filed the instant suit on August 24, 2006, and filed a First Amended Complaint on January 5, 2007. The First Amended Complaint seeks compensatory and punitive damages for violation of 42 U.S.C. § 1983, false arrest and imprisonment, invasion of privacy for false light, and a declaratory

---

class while under suspension and as here, was escorted from the classroom by University security officers. (Pl.'s Opp'n 38.) Moreover, defendants assert that plaintiff "had a long history of difficult and sometimes aggressive behavior with the SEAS faculty and staff." (Defs.' Mem. Supp. Summ. J. 2.) Defendants further assert that "for almost ten years, Saha had consistently failed to communicate with his colleagues, participate in faculty meetings, and respond to various Chairs of his Department." (*Id*.)

[4] Plaintiff places great significance on his contention that the University failed to communicate the suspension to him. Defendants, however, have submitted evidence in the form of affidavits and exhibits sufficient to establish their many attempts to communicate plaintiff's suspension. (*See* Defs.' Mem. Supp. Summ. J., Ex. B., Quick Messenger Service invoice; Lehman Aff. ¶ 6; Little Aff. ¶ 4; Walston Aff. ¶ 4.) In any event, whether plaintiff actually received the suspension letter is not an issue presently before the Court. As such, this Court draws no conclusion on that issue. The relevant factor here is that defendants have sufficiently established that plaintiff was in fact suspended, and under the terms of that suspension, he was not to come to campus to teach or perform any University responsibilities.

judgment.  (*See* Am. Compl.)

Defendants filed a motion for summary judgment on all counts of the First Amended Complaint on August 3, 2007, which was followed by plaintiff's opposition on November 8, 2007, and the reply thereto on December 5, 2007.

## II.  ANALYSIS

### A.   Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper when the evidence in the record demonstrates that there are no disputed issues of material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law.  FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if the evidence, when viewed in light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, a party must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party. *Id*. at 252.  The burden is on the movant to make the initial showing of the absence of a genuine issue of material fact in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party is then entitled to a judgment as a matter of law if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322.

### B.   Count I:  Violation of § 1983

Count I of plaintiff's First Amended Complaint alleges that defendants, under color of statute, ordinance, regulation, custom, or usage of the District of Columbia deprived plaintiff of

4

his rights, privileges, or immunities secured by the Constitution and laws of the District of Columbia in violation of 42 U.S.C. § 1983. (*See* Am. Compl. ¶ 21.) To state a claim under § 1983, plaintiff must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted "under color of" the law of a state, territory or the District of Columbia. *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). Defendants challenge whether plaintiff can establish the first of these elements.

     Plaintiff claims that defendants deprived him of his right to be in the classroom, to continue delivering his lecture, to move freely inside and outside of the classroom and on the campus, and the right to preserve his reputation and be portrayed as a law abiding person. (*See* Pl.'s Opp'n 17.) Plaintiff's § 1983 claim is clearly tied to his claims for false arrest and imprisonment (Count II) and invasion of privacy for false light (Count III). As to the claim for false arrest and imprisonment, the elements of a constitutional claim for false arrest are substantially identical to the elements of a common law false arrest claim such that the "constitutional claim cannot stand if the common law claim fails for lack of sufficient evidence." *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001) (quotation omitted). Regarding plaintiff's invasion of privacy for false light claim, where plaintiff has failed to show "an unreasonable and serious interference with protected interests," *Jackson v. District of Columbia*, 412 A.2d 948, 954 (D.C. 1980) (citation omitted), he has neither a constitutional nor a tort law claim. For reasons stated in the sections below, this Court finds that plaintiff's claims on Counts II and III are wholly without merit. As such, plaintiff has failed to establish that he was deprived of any right secured by the Constitution or the laws of the United States and his claim under § 1983 therefore fails.

Summary judgment as to Count I of plaintiff's First Amended Complaint will therefore be GRANTED.

### C. Count II: False Arrest and Imprisonment

In Count II of his First Amended Complaint, plaintiff alleges that "[d]efendants caused the false arrest and imprisonment of Professor Saha where he was detained and restrained from teaching his class and was escorted from the class room and then from the building where he was teaching." (Am. Compl. ¶ 24.) The elements of the tort of false arrest and false imprisonment are: (1) the detention or restraint of one against his will within boundaries fixed by the defendant, and (2) the unlawfulness of the restraint. *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 44 (D.D.C. 2007) (citing *Koroma v. United States*, 628 F. Supp. 949, 952 (D.D.C. 1986)). Liability is incurred for the procuring of a false arrest and imprisonment if by acts or words, one directs, requests, invites or encourages the unlawful detention of another. *Id*. (citing *Smith v. Dist. of Columbia*, 399 A.2d 213, 218 (D.C. 1979).

Defendants assert that they are entitled to summary judgment on Count II because plaintiff has failed to establish that he was detained. As defendants correctly point out, plaintiff does not claim that he was required to *stay* on the premises—instead, his chief complaint is that he was required to *leave*. Drawing all justifiable inferences in the plaintiff's favor and accepting plaintiff's evidence as true, even if this Court were to construe "restrained from teaching his class" and being "escorted from the class room and then from the building" as an arrest or detention, plaintiff has not shown that an unlawful restraint occurred. Under the terms of his suspension, plaintiff was prohibited from entering the University's premises. Plaintiff has not established that the University acted unlawfully by merely asking him to leave the premises and

escorting him away.  Moreover, affidavits by University security officers involved in the events giving rise to plaintiff's claim state that plaintiff was not handcuffed or touched in any way.  (*See* Archie Aff. ¶ 7; Williams Aff. ¶ 7.)  Accordingly, plaintiff's claim of false arrest and false imprisonment fails for failure to establish that an unlawful detention occurred.

Alternatively, where plaintiff cannot show that he has been actually detained, plaintiff must show a "reasonable apprehension of present confinement" based upon "the actions or words of the defendant" and not the "subjective state of mind of the plaintiff."  *Dent v. May Dep't Stores Co.*, 459 A.2d 1042, 1044 (D.C. 1982) (citation omitted).  Here, defendants argue that plaintiff was never arrested, nor was he ever threatened with arrest for refusal to cooperate.  (*See* Defs.' Reply Br. 4.)  Plaintiff claims, however, that he acted upon his belief that if he refused to leave the building, University security officers would have called the Metropolitan Police Department ("MPD") and transferred him to police custody.[5]  (*See* Pl.'s Opp'n 18.)  Plaintiff's belief was based purely on his subjective state of mind rather than on actual actions and words of the officers.  Plaintiff has therefore failed to demonstrate a reasonable apprehension of present confinement.  In light of these facts, defendants' motion for summary judgment as to Count II shall be GRANTED.

### D. Count III:  Invasion of Privacy for False Light

In Count III, plaintiff alleges that "[o]n September 1, 2005, defendants improperly publicized facts about plaintiff which placed plaintiff in a false light by attributing to his conduct

---

[5] Plaintiff's belief is premised on an April 1, 2004 article referenced in his opposition brief.  The article is from the University student newspaper and it describes 11 protesting students who were arrested by the MPD for failing to comply with a University order to leave the premises.  (*See* Pl.'s Opp'n 18, 20.)

characteristics which were false and deserving of arrest and being escorted out of the class room." (Am. Compl. ¶ 27.) Plaintiff further alleges that defendants "did so again on September 2, 2005, when they had Professor Saha escorted out of his office." (*Id*.) In order to prevail on a claim for invasion of privacy for false light, plaintiff must show: (1) publicity (2) about a false statement, representation or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be highly offensive to a reasonable person. *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 40 (D.D.C. 2002) (Lamberth, J.) (citing *Kitt v. Capital Concerts, Inc*., 742 A.2d 856, 859 (D.C. 1999). Having examined the record in this case, plaintiff's false light claim is flatly contradicted by the evidence.  First, there was no publicity of the events surrounding either plaintiff's suspension or his being asked to leave campus. Publicity, in the false light context, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as *substantially certain to become one of public knowledge*." *Steinbuch v. Cutler*, 463 F. Supp. 2d 1, 3 (D.D.C. 2006) (emphasis in original).  Plaintiff has made absolutely no allegation that the events were communicated to or became known to the public.  Second, plaintiff has failed to demonstrate how defendants' conduct constitutes a false statement, representation or imputation.  Defendants simply arranged for plaintiff to be escorted from premises where he was not supposed to be.  As defendants correctly state, the only plausible implication to be had from witnessing plaintiff being escorted from the premises is that he was not permitted to be there.  That implication was true as plaintiff had been suspended and barred from the campus just days earlier.  Because plaintiff has failed to prove these two elements of his false light claim, there is no need for the court to discuss the remaining elements required for invasion of privacy for false light.

Defendants' motion for summary judgment as to Count III shall be GRANTED.

### E. Declaratory Judgment

In Count IV, plaintiff seeks a declaratory judgment that the University may not rely on time-barred events occurring more than three years ago in making the decision whether to revoke plaintiff's tenure based on "persistent neglect of professional responsibilities."[6] (*See* Am. Compl. ¶ 35.) In essence, plaintiff argues that the District of Columbia's three-year statute of limitations on breach of contract claims applies to grievances arising under the University's Faculty Handbook. (*See* Am. Compl. ¶ 32 (citing *Kyriakopoulos v. George Washington University*, 866 F.2d 438, 442 (D.C. Cir. 1989)).) Plaintiff's argument is entirely without merit. The tenure revocation proceedings conducted against plaintiff were governed by the University's Faculty Code. Nothing in *Kyriakopoulos* indicates that the statute of limitations applies to a University's disciplinary process. Instead, that case merely says that the three-year statute of limitations applies to lawsuits filed against the University for breach of contract. *See Kyriakopoulos*, 866 F.2d at 442–43 (rejecting appellant's assertion that the University's grievance procedures tolls the statute of limitations for breach of contract claims). Thus, the three-year statute of limitations is wholly inapplicable to the period of alleged misconduct considered during plaintiff's tenure revocation proceedings.[7] Plaintiff's request that this Court enter a declaratory judgment on this

---

[6] As a preliminary matter, the Court notes that plaintiff filed Count IV as part of his First Amended Complaint filed January 5, 2007, before the University actually revoked his tenure on March 1, 2007.

[7] In any event, the July 24, 2006 decision issued by plaintiff's revocation hearing panel states that even if its decision was limited to a three-year limitations period, plaintiff neglected his professional responsibilities throughout this period and thus tenure revocation would still be warranted. (*See* Am. Compl., Ex. B. at 10.)

issue is therefore rejected and defendants' motion for summary judgment on Court IV will be GRANTED.

### III.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on all counts of plaintiff's First Amended Complaint will be GRANTED.

A separate order shall issue this date.

SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, on March 12, 2008.